## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| GENERAL HOSPITAL SUPPLY CORPORATION, a Connecticut corporation, )<br><br>Plaintiff, )<br>vs. )<br><br>CYGNUS MEDICAL L.L.C., a Connecticut limited liability company, and )<br><br>MADISON POLYMERIC ENGINEERING, INC., a Connecticut Corporation, and )<br><br>WALTER L. MAGUIRE, JR., an individual, )<br>Defendants. ) | Civil Action No. _____<br><br><br><br><br><br><br><br><br><br>August 26, 2005 |

## COMPLAINT

Plaintiff, General Hospital Supply Corporation ("General Hospital Supply" or "Plaintiff"), by its undersigned attorneys, for its causes of action against defendants ("Defendants"), Cygnus Medical L.L.C. ("Cygnus"), Madison Polymeric Engineering, Inc. ("Madison"), and Walter L. Maguire, Jr. ("Maguire") states and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for trademark infringement by Cygnus under Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Registered Trademark Infringement); Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (False Designation of Origin, False Advertising and Unfair Competition).

2.      This is also an action for patent infringement by Cygnus and Madison, and arises under the patent laws of the United States, Title 35, United States Code.

3.      This is also an action for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110a et seq. by Cygnus and Madison.

4.      Plaintiff seeks injunctive relief, damages and attorney fees in this action.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1338, 1367, 15 U.S.C. §1116 and §1121.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), § 1391(c) and § 1400(b) since defendants reside in this district.

## THE PARTIES

7.      Plaintiff, General Hospital Supply is a Connecticut corporation having its principal place of business at 2844 Gray Fox Road, Monroe, North Carolina  28110.

8.      On information and belief, Defendant Cygnus is a Connecticut limited liability company having its principal place of business at 13 Beaver Road, Branford, CT 06405.

9.      On information and belief, Defendant Madison is a Connecticut Corporation having its principal place of business at 13 Beaver Road, Branford, CT 06405.

10.     On information and belief, Defendant Walter L. Maguire, Jr. is an individual residing at 160 Uncas Point Road, Guilford, Connecticut 06437.

## FACTUAL ALLEGATIONS

11.     General Hospital Supply repeats and re-alleges the allegations of paragraphs 1-10 as if set forth in their entirety herein.

STM_195920_1

12.     On June 19, 2001, U.S. Patent No. 6,248,293 ("the '293 patent") entitled "Trayliner for Sterilization Process and Method of Sterilizing an Article," was duly issued by the United States Patent and Trademark Office. All rights, title and interest in the '293 patent were assigned to General Hospital Supply, which remains the sole owner of the '293 patent. A copy of the '293 patent is attached as Exhibit A.

13.     On May 21, 2002, U.S. Patent No. 6,391,260 ("the '260 patent") entitled "Instrument Pouch for Sterilization Process and Method of Sterilizing and Article," was duly issued by the United States Patent and Trademark Office. All rights, title and interest in the '260 patent were assigned to General Hospital Supply, which remains the sole owner of the '260 patent. A copy of the '260 patent is attached as Exhibit B.

14.     General Hospital Supply is the owner of U.S. Trademark Registration No. 2,934,370 for The Color Pink covering "lining, separating and dividing materials, namely foam sheeting, for use during sterilization of medical and surgical implements using gas plasma sterilization medium," in International Class 10, which is used to identify and promote Plaintiff's goods ("The Color Pink Trademark Registration"). *See* Exhibit C.

15.     Since at least as early as December, 1998, General Hospital Supply has been a leading provider of trayliners for plasma assisted sterilization (also referred to herein as "the Products") in the hospital products industry. General Hospital Supply has consistently offered its trayliners in connection with The Color Pink.

16.     General Hospital Supply has been actively expanding its use of The Color Pink as a trademark for its products and is at the forefront of the trayliner field. General Hospital Supply manufactures, advertises, offers to sell and sells its trayliners in connection with The Color Pink extensively throughout the United States.

STM_195920_1

17.     The Products sold in connection with The Color Pink are promoted and marketed through General Hospital Supply's promotional product literature. *See* Exhibit D.

18.     As a direct result of General Hospital Supply's long and extensive experience, care and skill in developing and providing high quality trayliners in connection with The Color Pink, General Hospital Supply has acquired a reputation for excellence in the trayliner industry.

19.     General Hospital Supply has expended significant time, money and effort in advertising and promoting the Products and The Color Pink as a trademark therefor, and in developing substantial and exclusive goodwill and reputation in connection with Products sold under The Color Pink trademark.

20.     As a result of these expenditures, combined with substantial sales of quality goods sold in connection with The Color Pink, the relevant consuming public has come to recognize The Color Pink as a source indicator, which favorably distinguishes General Hospital Supply's Products from those of others.

21.     Through such extensive and continuous use of The Color Pink in connection with the Products, General Hospital Supply has acquired a significant and valuable interest in and to the exclusive right to use The Color Pink as a source indicator in the field of trayliners.

22.     Upon information and belief, commencing at some time unknown to General Hospital Supply and continuing to the present, Defendants, without General Hospital Supply's consent, started developing, making, advertising, distributing, selling and/or offering for sale trayliners (the "Infringing Products") throughout the United States including the state of Connecticut under Cygnus's "Plasma Cel™ Instrument Guard" product line.  Specifically, a Cygnus product bearing SKU number EFR10 and bearing the description "Economy Plasma Foam" (hereinafter, "EFR 10 foam") is pink in color as reflected in The Color Pink trademark

STM_195920_1

registration, and is stated to be "a low cost alternative" that can be used as a medical instrument guard in the form of a trayliner or a pouch. *See* Exhibit E.

23.     At the time they began selling EFR 10 foam, Defendants had at least constructive knowledge of General Hospital Supply's ownership of and rights in and to The Color Pink trademark, including General Hospital Supply's exclusive right to use The Color Pink mark and the goodwill associated therewith.

24.     Madison advertises "custom medical foam products" on its Web site located at www.madpoly.com. *See* Exhibit F.

25.     Upon information and belief, Madison manufactures the EFR 10 foam.

26.     Upon information and belief, Maguire directly controls the activities of Madison and Cygnus.

27.     Upon information and belief, Cygnus and Madison are merely alter egos of Maguire.

28.     Upon information and belief, under direction from Maguire, Madison manufactures Infringing Products on behalf of Cygnus, such as the EFR 10 foam.

29.     Upon information and belief, Cygnus and Madison are related companies at least because they are owned and/or controlled by Maguire.

30.     Upon information and belief, the Infringing Products are marketed and sold to consumers in Connecticut and elsewhere.

31.     The Infringing Products, such as the EFR 10 foam, appear prominently on the promotional literature for the Infringing Products. *See* Exhibit E.

32.     Some of the claims of the '293 and '260 patents require a trayliner having a "multiplicity of holes." Other claims do not have this limitation.

STM_195920_1

33.    The trayliners sold by General Hospital Supply contain a multiplicity of holes adapted and configured to align with holes in the base of a tray.

34.    Cygnus advertises the infringing EFR 10 foam as having no holes.  See Exhibit E.

35.    Upon information and belief, the infringing EFR 10 foam is actually sold commercially in a form including multiple spaced apart holes that are adapted and configured to align with holes in the base of a tray using hole sizes and spacing that are identical to the Products sold by General Hospital Supply.

36.    Upon information and belief, the infringing EFR 10 foam is intentionally falsely advertised as a solid sheet in order to deceive General Hospital Supply into believing that it does not include spaced apart holes in an attempt by Cygnus to delay or prevent General Hospital Supply from bringing a patent infringement action against Cygnus.

37.    General Hospital Supply has sustained actual damage due to Cygnus's false advertising since it could have brought a lawsuit alleging patent infringement earlier in time to remove the EFR 10 foam from the market, had it known the actual physical configuration of the infringing EFR 10 foam.

38.    The pink foam that is used to manufacture the infringing EFR 10 foam is confusingly similar to General Hospital Supply's longstanding trademark for The Color Pink.

39.    The infringing EFR 10 foam is a colorable imitation of, if not a copy of, The Color Pink trademark registration.

40.    The Infringing Products are at least related, if not competitive with the trayliners sold under General Hospital Supply's trademark for The Color Pink.

41.     Upon information and belief, Cygnus targets and sells Infringing Products including the infringing EFR 10 foam to the same class of consumers that are familiar with and to whom General Hospital Supply offers its Products bearing The Color Pink.

42.     Upon information and belief, the Infringing Products are sold in the same channels of trade in which General Hospital Supply's Products bearing The Color Pink are sold.

43.     Cygnus's continued sale and promotion of the Infringing Products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Cygnus with General Hospital Supply.

44.     Cygnus's continued sale and promotion of the Infringing Products is likely to cause consumer confusion as to the origin, sponsorship or approval of the Infringing Products by General Hospital Supply.

45.     Cygnus's sale and promotion of the Infringing Products has been with knowledge or at least willful disregard of General Hospital Supply's exclusive rights in and to The Color Pink as a trademark and the fact that The Color Pink trademark designates and is associated exclusively with General Hospital Supply.

46.     Cygnus's sale and promotion of the Infringing Products is causing – and will continue to cause, unless the injunction sought in this complaint is granted, irreparable injury to General Hospital Supply because General Hospital Supply has no ability to control the nature or quality of the Infringing Products.

47.     General Hospital Supply's damages arise from lost profits from sales that are being diverted to Defendants, and from deprivation of the benefit of goodwill that has become associated with The Color Pink trademark.

STM_195920_1

48.     Defendants are being unjustly enriched by their manufacture, use and commercial exploitation of the Infringing Products which are merely colorable imitations of the Products sold by General Hospital Supply in connection with The Color Pink and for which substantial goodwill has been established through years of expenditures by General Hospital Supply in connection with the sale and promotion of the Products in connection with The Color Pink.

### COUNT ONE:
### INFRINGEMENT OF U.S. PATENT NO. 6,248,293

49.     General Hospital Supply repeats and re-alleges the foregoing paragraphs of its Complaint, as if the same were fully set forth herein.

50.     Based on independent laboratory tests conducted in accordance with ASTM D3575-93, the EFR 10 foam has property values literally falling within ranges of property values claimed in the '293 patent.

51.     Defendants have infringed and continue to infringe, have induced and continue to induce, and/or have committed and continue to commit acts of contributory infringement of, one or more claims of the '293 patent.

52.     Defendants' acts of patent infringement were and continue to be willful and deliberate.

53.     As a result of Defendants' infringement, General Hospital Supply has suffered damages in an amount not yet determined, and will continue to suffer damages in the future.

54.     Unless an injunction is issued enjoining Defendants and their agents, servants, employees, attorneys, representatives and all others acting on their behalf from infringing the '293 patent, General Hospital Supply will be greatly and irreparably harmed.

## COUNT TWO:
## INFRINGEMENT OF U.S. PATENT NO. 6,391,260

55.     General Hospital Supply repeats and re-alleges the foregoing paragraphs of its

Complaint, as if the same were fully set forth herein.

56.     Based on independent laboratory tests conducted in accordance with ASTM

D3575-93, the EFR 10 foam has property values literally falling within ranges of property

values claimed in the '260 patent.

57.     Defendants have infringed and continue to infringe, have induced and continue to

induce, and/or have committed and continue to commit acts of contributory infringement of, one

or more claims of the '260 patent.

58.     Defendants' acts of patent infringement were and continue to be willful and

deliberate.

59.     As a result of Defendants' infringement, General Hospital Supply has suffered

damages in an amount not yet determined, and will continue to suffer damages in the future.

60.     Unless an injunction is issued enjoining Defendants and their agents, servants,

employees, attorneys, representatives and all others acting on their behalf from infringing the

'260 patent, General Hospital Supply will be greatly and irreparably harmed.

## COUNT THREE:
## REGISTERED TRADEMARK INFRINGEMENT
## UNDER SECTION 32 OF THE LANHAM ACT, 15 U.S.C § 1114

61.     General Hospital Supply repeats and re-alleges the foregoing paragraphs of its

Complaint, as if the same were fully set forth herein.

STM_195920_1

62.     Cygnus's actions constitute infringement of The Color Pink Trademark Registration in violation of General Hospital Supply's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

63.     As a direct result of Cygnus's unlawful activities, General Hospital Supply has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

64.     Cygnus's conduct has caused and will continue to cause injury to General Hospital Supply's goodwill and reputation, and will continue to both damage General Hospital Supply and the public unless enjoined by this Court.

### COUNT FOUR:
### FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### UNDER SECTION 43(a)(1)(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

65.     General Hospital Supply repeats and re-alleges the foregoing paragraphs of its Complaint, as if the same were fully set forth herein.

66.     Cygnus's actions constitute a false designation of origin under 15 U.S.C. § 1125(a), which is likely to cause confusion, mistake or to deceive prospective consumers into believing that the Infringing Products are affiliated with, sponsored by, or somehow connected with General Hospital Supply.

67.     Cygnus's actions constitute unfair competition because such actions are false and misleading and misrepresent the nature, characteristics and qualities of the Infringing Products.

68.     Cygnus's unlawful activities reflect adversely on General Hospital Supply because General Hospital Supply has no ability to control the quality of the Infringing Products, and as the believed source of origin, General Hospital Supply's efforts to continue to protect its

STM_195920_1

reputation for high quality products will be hampered, resulting in the loss of sales thereof to the irreparable harm of General Hospital Supply.

69.     As a direct and proximate result of Cygnus's above-described actions, General Hospital Supply has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

**COUNT FIVE:**
**FALSE ADVERTISING**
**UNDER SECTION 43(a)(1)(B) OF THE LANHAM ACT, 15 U.S.C. §1125(b)**

70.     General Hospital Supply repeats and re-alleges the foregoing paragraphs of its Complaint, as if the same were fully set forth herein.

71.     Defendant Cygnus has made false and misleading factual representations in commerce regarding the nature, qualities and characteristics of its products, including but not limited to the infringing EFR 10 foam.

72.     In particular, Cygnus has falsely represented that its EFR 10 foam does not include a multiplicity of holes in an attempt to delay or even prevent General Hospital Supply from accusing the EFR 10 foam of infringing claims of the '293 and '260 patents.

73.     Cygnus has thus made false and misleading statements in a commercial advertising or publication in order to promote its goods and to otherwise further its own business interests.

74.     General Hospital Supply has suffered actual damages by Cygnus's deception because it has delayed General Hospital Supply's ability to bring a lawsuit for patent infringement.

STM_195920_1

**COUNT SIX:**
**VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT**

75.     General Hospital Supply repeats and re-alleges the foregoing paragraphs of its Complaint, as if the same were fully set forth herein.

76.     Cygnus's actions, as set forth in the preceding paragraphs, are unfair and deceptive.

77.     Cygnus's actions, as set forth in the preceding paragraphs, offend public policy as it has been established by statutes and the common law.

78.     The representations by Cygnus in its promotional literature are misleading to consumers.  These representations are likely to affect the conduct of consumers when consumers interpret Cygnus's representations reasonably under the circumstances.

79.     Cygnus's actions, as set forth in the preceding paragraphs, cause substantial injury to consumers.

80.     Cygnus's actions caused and continue to cause substantial injury to General Hospital Supply, which has resulted in an ascertainable loss of money and damage to the Plaintiff's reputation in the industry.

81.     Cygnus's  actions are being undertaken in the conduct of trade and commerce.

82.     Cygnus's actions violate public policy and are immoral, unscrupulous, unethical, offend traditional common law concepts of fairness and are in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110a et seq.

83.     In accordance with C.G.S. § 42-110(g)(c), a copy of this complaint was mailed to the Attorney General and the Commissioner of Consumer Protection.

84.     The above-described acts constitute unfair trade practices under CUTPA.

85.    As a result of Cygnus's violations of CUTPA, General Hospital Supply has been damaged in an amount to be ascertained at trial, and is entitled to collect its attorney fees.

## DEMAND FOR RELIEF

WHEREFORE, General Hospital Supply Corporation respectfully requests that the Court enter judgment against Cygnus Medical L.L.C., Madison Polymeric Engineering, Inc. and Walter L. Maguire, Jr. as follows:

(a)    Award General Hospital Supply a judgment on each of its claims in an amount to be determined at trial;

(b)    Issue a permanent injunction against the Defendants' current and future sales of any product in the field of trayliners having a color confusing similar to The Color Pink trademark;

(c)    Award damages adequate to compensate General Hospital Supply for the aforesaid infringement under 15 U.S.C. § 1117(a);

(d)    Award damages adequate to compensate General Hospital Supply for the aforesaid infringement under 35 U.S.C. et seq. including General Hospital Supply's lost profits, but not less than a reasonable royalty;

(e)    Award the recovery of the Defendants' profits to General Hospital Supply under 15 U.S.C. § 1117(a);

(f)    Award the recovery of General Hospital Supply's costs of this action under 15 U.S.C. § 1117(a);

(g)    Declare this case exceptional and award General Hospital Supply its reasonable attorney fees under 15 U.S.C. § 1117(a) and 35 U.S.C. § 285;

STM_195920_1

(h)     Award punitive damages to General Hospital Supply pursuand to C.G.S. §42-110(g);

(i)     Award General Hospital Supply its attorney fees pursuant to C.G.S. §42-110(g); and

(j)     Provide such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action of all issues triable by jury in this matter.

Dated:  Stamford, Connecticut
        August 26 2005

GENERAL HOSPITAL SUPPLY CORP.
By Its Attorneys

Barry Kramer (CT 06932)
  bkramer@EdwardsAngell.com
Scott D. Wofsy (CT 16413)
  swofsy@EdwardsAngell.com
Carrie Webb Olson (CT 22143)
  colson@EdwardsAngell.com
Brian R. Pollack (CT 26726)
  bpollack@EdwardsAngell.com
EDWARDS & ANGELL LLP
301 Tresser Boulevard
One Stamford Plaza
Stamford, CT 06091
Telephone:  203-975-7505
Facsimile:  203-975-7180

STM_195920_1